NELSON P. COHEN
United States Attorney

FRANK V. RUSSO
Assistant U.S. Attorney
SHAWN C. FULLER
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: frank.russo@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>vs. )<br><br>THOMAS P. RANES, )<br>NOPENONE DENNIS SHINE, )<br>CURTIS H. MCDONALD, )<br>JOSHUA S. MURPHY, )<br>JUSTIN KILLIAN, )<br>RODNEY W. RHODEN, )<br>SAMUEL JOSEPH MATECHUK, )<br>   a/k/a "Joe", )<br>MITCHELL S. LEBLANC, )<br>   a/k/a "Baldie", )<br>DANIEL J. KNEITEL, )<br>   a/k/a "Aussie", )<br>KURTIS R. CROY, )<br>   a/k/a "the Photographer", ) | No. 3:06-cr-00041-RRB-JDR<br><br>COUNT 1:<br>CONSPIRACY TO IMPORT<br>CONTROLLED SUBSTANCES<br>  Vio. 21 U.S.C. §§ 963, 952 &<br>960(a) & (b)(1), (b)(3)<br><br>COUNT 2:<br>CONSPIRACY IN RELATION TO<br>MARIJUANA TRAFFICKING<br>  Vio. 21 U.S.C. §§ 846, 841(a)(1)<br>& (b)(1)(A)<br><br>COUNTS 3 - 136:<br>MONEY LAUNDERING<br>  Vio. 18 U.S.C. §§<br>1956(a)(1)(A)(i), (a)(1)(B)(i),<br>(a)(1)(B)(ii) and 2 |



| | |
|---|---|
| KYLE MCDONALD-WOLOCHATIUK,<br>WILLIAM C. YANCEY,<br> a/k/a "The Viking", and<br>YIN TAK MIU,<br><br> Defendants. | COUNTS 137 - 140:<br>INTERNATIONAL MONEY<br>LAUNDERING<br> Vio. 18 U.S.C. §§<br>1956(a)(2)(B)(i) and 2<br><br>COUNT 141:<br>DRUG FORFEITURE<br> 21 U.S.C. §§ 853(a)(1) & (a)(2)<br><br>COUNT 142:<br>MONEY LAUNDERING<br>FORFEITURE<br> 18 U.S.C. § 982(a)(1) |

## S E C O N D  S U P E R S E D I N G  I N D I C T M E N T

The Grand Jury charges that:

### COUNT 1

1.    Beginning at some exact time unknown but at least on or about May 21,
2000, and continuing until at least on or about April 22, 2006, both dates being
approximate and inclusive, in the District of Alaska and elsewhere, the defendants
THOMAS P. RANES (hereinafter "RANES"), NOPENONE DENNIS SHINE, CURTIS
H. MCDONALD, JOSHUA S. MURPHY, JUSTIN KILLIAN, RODNEY W. RHODEN,
SAMUEL JOSEPH MATECHUK, a/k/a "Joe", MITCHELL S. LEBLANC, a/k/a
"Baldie", DANIEL J. KNEITEL, a/k/a "Aussie", KURTIS R. CROY,  a/k/a "the
Photographer", and KYLE MCDONALD-WOLOCHATIUK, WILLIAM C. YANCEY,
a/k/a "The Viking", and YIN TAK MIU, together with other co-conspirators, both known

and unknown to the grand jury (the "conspirators"), within the District of Alaska and

elsewhere, did unlawfully and knowingly, combine, conspire, confederate, and agree with

each other to import 1000 kilograms or more of marijuana, as well as 3,4

Methylenedioxymethamphetamine ("MDMA" or "ecstasy") into the United States from

Canada, in violation of Title 21, United States Code, Sections 952 and 960(a), (b)(1).

### METHOD AND MEANS OF THE CONSPIRACY

2.      It was part of the conspiracy for the conspirators to import controlled

substances, primarily marijuana, from Canada into the Anchorage, Alaska area. The

conspirators would arrange for the shipment of approximately 200 to 900 pounds of

marijuana, or "BC Bud", from Canada, roughly every six weeks, concealed in secret

compartments in vehicles and fuel tanks. The conspirators would send cash to Canada to

pay for the shipments, often concealing the cash in the same secret compartments used to

transport the marijuana, or in spare tires of vehicles. The conspirators would also import

MDMA, or ecstasy, from Canada into the United States.

3.      It was part of the conspiracy for THOMAS P. RANES, Joe W. Bryant, and

Thomas M. Cody, to act as partners in the conspiracy. Bryant and Cody financed and

handled the distribution of the marijuana, and RANES coordinated and organized the

shipments of marijuana. RANES assumed responsibility for the financing and

distribution of marijuana after Cody was murdered. RANES would organize and

coordinate shipments by using prepaid cellular telephones, text messages, and email

messages to communicate with his sources of supply in Canada, which included two

separate groups. One source of supply was based in the Vancouver area, whose members included, but were not limited to SAMUEL JOSEPH MATECHUK, a/k/a "Joe", and MITCHELL S. LEBLANC, a/k/a "Baldie" ("the Vancouver Source"). The second source of supply was based in the Whistler, British Columbia area, whose members included, but were not limited to DANIEL J. KNEITEL, a/k/a "Aussie", KURTIS CROY, a/k/a "the Photographer", and KYLE MCDONALD-WOLOCHATIUK ("The Whistler Source"). The Whistler Source supplied MDMA to RANES.

4.      It was part of the conspiracy for RANES and Bryant to divide the marijuana and profits once the shipment arrived in Alaska, where it was sold by RANES, Bryant, Dylan N. Bales, JOSHUA S. MURPHY, JUSTIN KILLIAN, Robert H. McDonald, WILLIAM YANCEY, YIN TAK MIU, and other conspirators. RANES would sometimes receive both personal and business assets in exchange for marijuana.

5.      It was part of the conspiracy for CURTIS H MCDONALD, Kevin A. Browning, Robert H. McDonald, NOPENONE DENNIS SHINE, RODNEY W. RHODEN, RANES, and James Robert Ranes, as well as others, to drive vehicles used to transport marijuana and money to and from Canada.

6.      It was part of the conspiracy for the conspirators to conduct financial transactions to disguise the source of the proceeds of the conspiracy as well as to evade detection by law enforcement. RANES and other conspirators would disguise the proceeds of the conspiracy by using RANES's welding and automotive repair business, Ranes & Shine, LLC, as well as RANES's other businesses. The conspirators would use

Page 4 of 30

Ranes & Shine, LLC's assets, including its equipment and bank accounts, to facilitate the conspiracy as well as to launder the proceeds of the conspiracy. The conspirators also sent proceeds of the drug conspiracy to Alabama to James Robert Ranes, as well as foreign banks, so as to disguise the source of the proceeds.

7.     During the period of the conspiracy, the conspiracy generated over $10 million in gross drug proceeds. The proceeds of the conspiracy were used to pay for future shipments of marijuana from Canada, to invest in real estate in Alaska, Alabama, and the Ukraine, as well as to purchase and maintain high-priced assets and other equipment, including but not limited to the assets set forth herein.

7a.     It was part of the conspiracy for the conspirators to use violence and firearms to maintain control of and protect the conspiracy, to ensure the repayment of debts, and to intimidate potential competitors or to remove members of the conspiracy.

## OVERT ACTS

8.     In furtherance of the conspiracy, and to effect the objects thereof, the defendants, together with other persons known and unknown to the Grand Jury, performed and caused to be performed certain overt acts in the District of Alaska and elsewhere, including, but not limited to the following:

OA1.     On or about May 21, 2000, RANES possessed a quantity of marijuana packaged for sale.

OA2.  In or about September 2002, RANES's business, RANES & SHINE, LLC manufactured a hidden compartment in a fuel tank.  RANES loaded this tank into a van driven by Cody, in order to assist in the importation of marijuana from Canada.

OA3.  In or about January 2003, Cody and MURPHY arranged for other individuals to assault and to do physical harm to a former conspirator and prospective competitor, who was shot five times on January 10, 2003, in Anchorage.

OA4.  On or about October 26, 2004, an employee of Ranes & Shine, LLC deposited money that smelled of marijuana into Ranes & Shine, LLC's Northrim Bank account.

OA5.  Between October 20, 2004, and November 16, 2004, four international wire transfers were made from the Ranes & Shine, LLC Northrim Bank account to Marine Transport Bank in Odessa, Ukraine, totaling $187,000 in drug proceeds.

OA6.  In or about late November, 2004, RHODEN drove a 2004 Ford F350 Pickup Truck, licence #ESS267, hauling a snow machine trailer in which approximately 300 pounds of marijuana was concealed, into the United States from Canada.

OA7.  Between on or about December 7, 2004, and on or about December 17, 2004, James Robert Ranes arranged for the international wire transfer of $350,000 in drug proceeds from a Southtrust Bank in Bay Minette, Alabama to a bank in Latvia.

OA8.  On or about February 18, 2005, RANES, SHINE, KNEITEL, CROY, RHODEN, and KILLIAN met in Hawaii.

OA9. On or about February 28, 2005, Cody made an international wire transfer of approximately $100,000 to Marine Transport Bank in Odessa, Ukraine.

OA10. On or about March 3, 2005, James Robert Ranes arranged for the international wire transfer of $130,000 in drug proceeds from Southtrust Bank in Bay Minette, Alabama to a bank in Latvia.

OA11. On or about March 11, 2005, $9,344.91 cash in drug proceeds was deposited into Ranes & Shine, LLC's Northrim Bank account. Of this deposit, $9,000 appeared to have been run through a washing machine, in that it had the smell of laundry detergent and a wrinkled appearance.

OA12. On or about March 16, 2005, James Robert Ranes arranged for the international wire transfer of $120,000 in drug proceeds from Southtrust Bank in Bay Minette, Alabama to a bank in Latvia.

OA13. On or about May 6, 2005, a conspirator deposited approximately $100,000 cash in drug proceeds, provided by James Robert Ranes, into a bank account at Southtrust Bank, in Bay Minette, Alabama. The conspirator intended to wire this money to a foreign country, but $91,000 of this money was seized by the Drug Enforcement Administration.

OA14. In or about mid-May, 2005, Cody confiscated RANES' racecar because RANES was late in repaying a debt to Cody. Cody had lent money to RANES from Cody's share of the drug proceeds of the conspiracy.

OA15. On or about May 20, 2005, BALES opened a bank account at Northrim Bank with $9,450 cash that smelled like marijuana. BALES withdrew $9,400 that same day by cashier's check made out to Ranes & Shine, LLC.

OA16. On or about May 27, 2005, KURTIS CROY and KYLE MCDONALD-WOLOCHATIUK attempted to deliver approximately 225 pounds of marijuana and one ounce of ecstasy (MDMA) to Whitehorse, Yukon Territory. CURTIS MCDONALD drove to Canada to meet CROY and MCDONALD-WOLOCHATIUK with over one million dollars cash in drug proceeds concealed in the vehicle CURTIS MCDONALD was driving. CROY AND MCDONALD-WOLOCHATIUK were arrested by Canadian authorities before they met CURTIS MCDONALD, who instead drove to Vancouver with the money. The marijuana and ecstasy was seized by Canadian authorities.

OA16a. Between on or about May 27 and May 31, 2006, Cody sent YANCEY to intimidate RANES because of the seized shipment. YANCEY had previously threatened RANES because RANES' wife had called Cody to threaten to expose the conspiracy.

OA16b. Between on or about May 30, 2005, and June 1, 2005, RANES and SHINE plotted to remove Cody from the conspiracy as well as steal the over $1 million dollars in drug proceeds being driven to Canada by CURTIS MCDONALD. RANES used his prepaid cellular telephones to discuss Cody's removal with SHINE, as well as communicate with CURTIS MCDONALD and DANIEL KNEITEL in Canada. Cody

was last seen alive on June 1, 2005 at approximately 2:45 pm, driving a 2004 Ford Explorer, license plate #ELV647, belonging to RANES.

OA16c. On or about June 1, 2005, at approximately 2:50 pm, SHINE shot Cody with a 9 mm Beretta, serial #BER231909Z, fitted with a homemade silencer, in the vicinity of Cody's house located at 6621 Our Own Lane in Anchorage. SHINE immediately called RANES after the shooting, and RANES called SHINE back using a prepaid cellular telephone. SHINE drove away the 2004 Ford Explorer, with Cody's body inside the vehicle. SHINE drove south on the Seward Highway from Anchorage.

OA16d. On or about June 1, 2005, at approximately 3:08 pm, RANES drove a 2004 Ford F350 Pickup Truck, licence #ESS267, to a location off the Seward Highway south of Anchorage in order to assist SHINE and plan the disposal of Cody's body. SHINE then transported Cody's body in the 2004 Ford Explorer to the Jim Creek area in the Mat-Su Valley. RANES later met SHINE in that area to burn the 2004 Ford Explorer and conceal evidence of Cody's murder. As a result of the removal of Cody from the conspiracy, Ranes assumed a greater leadership role in the conspiracy and garnered a larger share of the conspiracy's profits.

OA17. On or about June 1, 2005, prior to his murder, Cody possessed a quantity of marijuana packaged for sale, along with drug packaging materials, and approximately $11,000, which were found at his residence on or about June 7, 2005.

OA18.  On or about June 2, 2005, CURTIS MCDONALD flew from Vancouver to Anchorage after dropping off the vehicle he was driving and putting over $1 million dollars in drug proceeds into storage in the Vancouver area.

OA19.  On or about June 3, 2005, RANES and Bryant searched Cody's residence for money that was proceeds of the conspiracy.

OA20.  On or about June 9, 2005, CURTIS MCDONALD flew from Anchorage to Vancouver to retrieve the over $1 million dollars in drug proceeds that was in storage and drive it back to Anchorage.

OA21.  On or about June 25, 2005, Bales deposited $9,000 cash in drug proceeds into his bank account at Northrim Bank, and then issued a check to Ranes & Shine, LLC, for $9,000.

OA22.  On or about July 22, 2005, Browning opened a bank account at Northrim Bank with $28,500 cash in drug proceeds.  He immediately converted $28,300 of this money into a cashier's check payable to Ranes & Shine welding.

OA23.  On or about July 27, 2005, Browning brought $120,000 cash in drug proceeds into Northrim Bank and purchased two cashier's checks made out to Ranes & Shine, in the amounts of $52,000 and $68,000.

OA24.  On or about August 4, 2005, Bales deposited $7,500 cash in drug proceeds into his bank account at Northrim Bank, which was withdrawn by check the same day at a different Northrim Bank branch.

OA25. In or about August 2005, RANES arranged for the delivery of approximately $500,000 to the Whistler Source.

OA26. In or about mid-August 2005, CURTIS MCDONALD drove to Canada in a vehicle with secret compartments to pick up marijuana from the Whistler Source, which did not provide said marijuana.

OA27. On or about August 25, 2005, CURTIS MCDONALD flew to Anchorage from Vancouver, after dropping off a vehicle with secret compartments with the Vancouver Source.

OA28. On or about September 2, 2005, CURTIS MCDONALD flew to Vancouver from Anchorage to pick up a load of marijuana.

OA29. On or about November 2, 2005, CURTIS MCDONALD, driving a 2005 Ford F250 Pickup Truck, license #EVG533, hauling approximately 206 pounds of Canadian marijuana provided by the Whistler Source, crossed the border from Canada into Alaska.

OA30. On or about November 14, 2005, RANES wired approximately $4,000 to California for MURPHY.

OA31. On or about November 16, 2005, RANES wired approximately $1,000 to California for MURPHY.

OA32. On or about November 23, 2005, RANES wired approximately $2,000 to California for MURPHY.

OA33.  In or about mid-December, 2005, Browning, driving a 2002 BLACK HAULMARK ENCLOSED FLATBED CAR TRAILER, Alaska License Number 8686RP, VIN 4XSGB28232G037941 picked up approximately 300 pounds of marijuana from the Vancouver source, which was placed in a hidden compartment and driven to Anchorage, where it was distributed to Dylan Bales, JUSTIN KILLIAN, and others.

OA34.  On or about December 20, 2005, JUSTIN KILLIAN returned a box of marijuana to RANES at the Ranes & Shine, LLC shop.

OA35.  On or about January 20, 2006, CURTIS H. MCDONALD, driving a 2005 Ford F250 Pickup Truck, license #EVG533, hauling a 2001 Fifth Wheel Gooseneck Flatbed trailer, licence 1769SH, departed Alaska bound for Canada to pick up a marijuana shipment.

OA36.  On or about February 1, 2006, CURTIS H. MCDONALD, driving a 2005 Ford F250 Pickup Truck, license #EVG533, hauling a 2001 Fifth Wheel Gooseneck Flatbed trailer, licence 1769SH, containing approximately 400 pounds of Canadian marijuana in a hidden compartment, crossed the border from Canada into Alaska. CURTIS H. MCDONALD claimed he was coming from Skagway, Alaska, after delivering parts for a government project.

OA37.  On or about February 2, 2006, CURTIS H. MCDONALD drove the vehicle hauling the marijuana to a warehouse located at 1601 E. 84th Ave., and then to Ranes & Shine, LLC's parking lot, where he was met by RANES and BALES.

Page 12 of 30

OA38. On or about February 2, 2006, BROWNING entered 1601 E. 84th Ave., unit 5. SHINE brought various tools, including a sledgehammer and cordless drill, inside 1601 E. 84th Ave., unit 5, to help unload the marijuana.

OA39. On February 2, 2006, at approximately 7:42 pm, RANES drove the trailer containing marijuana to 1601 E. 84th Ave., where he backed the trailer into unit 5, detached the trailer. The garage door to unit 5 was then closed.

OA40. On February 2, 2006, at approximately 10:12 pm, RANES, SHINE, and Bales unloaded numerous boxes containing approximately 400 pounds of marijuana from the unit. Three boxes were loaded into Bales's vehicle, a 2005 Chevrolet K2500HD Silverado, 4-Door Extended Cab Pickup Truck, licence #ESG274, and approximately 20 - 22 boxes were loaded into a snow machine trailer2005 Triton Enclosed snow machine trailer, license #3809SH, which RANES retrieved from Ranes & Shine, LLC's parking lot. BALES drove away in his vehicle, while RANES towed away the snow machine trailer with MCDONALD's vehicle. SHINE followed RANES in a 2004 Ford F350 Crew Cab Dually Pickup Truck, license #EYC813. RANES towed the snow machine trailer to his house located at 14033 Pickett Street, Anchorage, AK 99516.

OA41. On February 13, 2006, $8,100 cash that smelled of marijuana was deposited into the Ranes & Shine, LLC's First National Bank Alaska account.

OA42. On or about February 23, 2006, SHINE drove to Canada in a 2004 Ford F350 Crew Cab Dually Pickup Truck, license # EYC813, with approximately

$500,000 cash to provide partial payment for a marijuana shipment to MITCHELL S. LEBLANC, a/k/a "Baldie".

OA43. On February 26, 2006, RANES took commercial airline flights to Vancouver, British Columbia to meet with the Vancouver Source and the Whistler Source. RHODEN also flew to Vancouver.

OA44. Between March 6 and 10, 2005, Browning installed a hitch on his vehicle designed to haul a fifth wheel flatbed trailer.

OA45. On March 13, 2006, Robert H. McDonald attempted to drive to Canada to deliver approximately $400,000 as partial payment for the next shipment of marijuana to MITCHELL S. LEBLANC, a/k/a "Baldie".

OA46. On or about March 14, 2006, CURTIS H. MCDONALD crossed the border into Canada driving a 2005 Ford F250 Pickup Truck, license #EVG533, to drop off approximately $400,000 as partial payment for the next shipment of marijuana.

OA47. On or about April 8, 2006, Browning, driving a 2002 Ford F350 extended cab dual wheel pickup truck, Alaska license #ENF430, hauling the 2001 Fifth Wheel Gooseneck Flatbed trailer, licence 1769SH, departed Alaska and entered Canada to drop off the trailer with the Vancouver source of supply. Browning dropped off the trailer and returned to Alaska by airplane.

OA48. On or about April 16, 2006, RANES and KNEITEL discussed supplying RANES with ecstasy concealed in a spare tire.

OA49. On or about April 16, 2005, RANES and KNEITEL discussed loaning CROY money to keep CROY from revealing the existence of the conspiracy.

OA50.  On or about April 17, 2006, RANES agreed to send CROY money in order to keep CROY from revealing the existence of the conspiracy.

OA51.  On or about April 18, 2006, Browning flew to Seattle, Washington to pick up his 2002 Ford F350 extended cab dual wheel pickup truck, Alaska license #ENF430, in order to drive it to Canada to pick up the next load of marijuana

OA52.  On or about April 19, 2006, Browning picked up approximately 347 pounds of marijuana from SAMUEL JOSEPH MATECHUK, a/k/a "Joe", who was driving a Silver 2003 GMC Sierra Truck, in Surrey, British Columbia.

OA53.  On or about April 21, 2006, KILLIAN spoke to RANES about purchasing marijuana from the incoming shipment.

OA54.  On or about April 22, 2006, Browning crossed the border into the United States  driving a 2002 Ford F350 extended cab dual wheel pickup truck, Alaska license #ENF430, hauling the 2001 Fifth Wheel Gooseneck Flatbed trailer, licence 1769SH, in which approximately 347 pounds of marijuana was concealed.

OA55.  On or about April 22, 2006, Bryant asked RANES to put the marijuana in a storage locker once it arrives.

OA56.  On or about April 22, 2006, Browning drove his 2002 Ford F350 extended cab dual wheel pickup truck, Alaska license #ENF430, hauling the 2001 Fifth

Wheel Gooseneck Flatbed trailer, licence 1769SH, in which approximately 347 pounds of marijuana was concealed, into the Ranes & Shine, LLC business.   RANES, Browning, and Robert McDonald began to unload the marijuana from the trailer.

All of which is in violation of Title 21, United States Code, Sections 963, 952, 960(a) and (b)(1) & (b)(3).

## COUNT 2

9.     Beginning at some exact time unknown but at least on or about May 21, 2000, and continuing until at least on or about April 22, 2006, both dates being approximate and inclusive, in the District of Alaska and elsewhere, the defendants THOMAS P. RANES, NOPENONE DENNIS SHINE, CURTIS H. MCDONALD, JOSHUA S. MURPHY, JUSTIN KILLIAN, RODNEY RHODEN, SAMUEL JOSEPH MATECHUK, a/k/a "Joe", MITCHELL S. LEBLANC, a/k/a "Baldie", DANIEL J. KNEITEL, a/k/a "Aussie", KURTIS CROY, a/k/a "the Photographer", KYLE MCDONALD-WOLOCHATIUK, WILLIAM C. YANCEY, a/k/a "The Viking", and YIN TAK MIU, together with other co-conspirators, both known and unknown to the grand jury, within the District of Alaska and elsewhere, did  unlawfully and knowingly combine, conspire, confederate, and agree with each other to distribute, and possess with intent to distribute 1000 kilograms or more of marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) & (b)(1)(A).

## METHOD OF CONSPIRACY / OVERT ACTS

10.    The allegations in paragraphs 2  through 8 above are re-alleged in their entirety and incorporated herein.

All of which is in violation of Title 21 United States Code Sections 846 and 841(b)(1)(A).

## COUNTS 3 - 136

11.    The following description of the violation of Title 18, United States Code, Section 1956(a)(1) and 2 are to be applied to Counts 3 through 136 and are incorporated therein by reference.

12.    On or about the respective dates specified below, within the District of Alaska and elsewhere, the corresponding defendant(s) as indicated, knowingly conducted and attempted to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of a specified unlawful activity (namely, conspiracy to import, distribute, and to possess with intent to distribute controlled substances, a violation of 21 U.S.C. §§ 963 & 846), (1) knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity; (2) knowing that such transactions were designed in whole and in part (a) to conceal and disguise the nature, location, source, ownership and control of the proceeds of a specified unlawful activity; (b) to promote the carrying on of a specified unlawful activity; and (c) to avoid a financial transaction reporting requirement; and aided and abetted the same.

13.    On or about the dates and in the approximate amounts listed below, and in the District of Alaska and elsewhere, defendant THOMAS P. RANES participated in financial transactions involving proceeds derived from the specified unlawful activity described in Counts 1 & 2 of this Indictment, in that is they made cash deposits consisting of drug trafficking proceeds into bank accounts to accumulate drug trafficking proceeds in those bank accounts for the illegal purposes described in paragraph 12 above, and aided and abetted the same, to wit:

| COUNT | DATE | DEFENDANT | BANK ACCOUNT | CASH DEPOSITED |
|---|---|---|---|---|
| 3 | 2/9/04 | Ranes | Northrim Ranes & Shine, LLC | $6,000.00 |
| 4 | 2/13/04 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 5 | 3/1/04 | Ranes | Northrim Ranes & Shine, LLC | $8,000.00 |
| 6 | 3/26/04 | Ranes | Northrim Ranes & Shine, LLC | $6,500.00 |
| 7 | 3/26/04 | Ranes | Northrim Ranes & Shine, LLC | $4,500.00 |
| 8 | 4/1/04 | Ranes | Northrim Ranes & Shine, LLC | $8,300.00 |
| 9 | 4/2/04 | Ranes | Northrim Ranes & Shine, LLC | $3,900.00 |
| 10 | 4/9/04 | Ranes | Northrim Ranes & Shine, LLC | $8,900.00 |
| 11 | 4/12/04 | Ranes | Northrim Ranes & Shine, LLC | $8,600.00 |
| 12 | 4/15/04 | Ranes | Northrim Ranes & Shine, LLC | $6,910.00 |
| 13 | 4/16/04 | Ranes | Northrim Ranes & Shine, LLC | $8,950.00 |
| 14 | 4/20/04 | Ranes | Northrim Ranes & Shine, LLC | $5,175.00 |
| 15 | 4/30/04 | Ranes | Northrim Ranes & Shine, LLC | $6,102.00 |
| 16 | 6/18/04 | Ranes | Northrim Ranes & Shine, LLC | $8,500.00 |

| 17 | 7/2/04 | Ranes | Northrim Ranes & Shine, LLC | $8,740.00 |
| 18 | 7/8/04 | Ranes | Northrim Ranes & Shine, LLC | $5,850.00 |
| 19 | 7/9/04 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 20 | 7/9/04 | Ranes | Northrim Ranes & Shine, LLC | $4,400.00 |
| 21 | 7/23/04 | Ranes | Northrim Ranes & Shine, LLC | $8,000.00 |
| 22 | 8/13/04 | Ranes | Northrim Ranes & Shine, LLC | $8,782.00 |
| 23 | 8/30/04 | Ranes | Northrim Ranes & Shine, LLC | $6,000.00 |
| 24 | 9/2/04 | Ranes | Northrim Ranes & Shine, LLC | $8,000.00 |
| 25 | 9/3/04 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 26 | 9/7/04 | Ranes | Northrim Ranes & Shine, LLC | $9,620.00 |
| 27 | 9/7/04 | Ranes | Northrim Ranes & Shine, LLC | $1,371.00 |
| 28 | 9/8/04 | Ranes | Northrim Ranes & Shine, LLC | $6,000.00 |
| 29 | 9/14/04 | Ranes | Northrim Ranes & Shine, LLC | $7,576.00 |
| 30 | 9/21/04 | Ranes | Northrim Ranes & Shine, LLC | $8,400.00 |
| 31 | 9/23/04 | Ranes | Northrim Ranes & Shine, LLC | $17,660.00 |
| 32 | 9/24/04 | Ranes | Northrim Ranes & Shine, LLC | $6,103.00 |
| 33 | 10/8/04 | Ranes | Northrim Ranes & Shine, LLC | $9,600.00 |
| 34 | 10/12/04 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 35 | 10/18/04 | Ranes | Northrim Ranes & Shine, LLC | $9,990.00 |
| 36 | 10/19/04 | Ranes | Northrim Ranes & Shine, LLC | $9,222.00 |
| 37 | 10/20/04 | Ranes | Northrim Ranes & Shine, LLC | $9,160.00 |
| 38 | 10/21/04 | Ranes | Northrim Ranes & Shine, LLC | $8,815.00 |
| 39 | 10/22/04 | Ranes | Northrim Ranes & Shine, LLC | $9,000.00 |
| 40 | 10/27/04 | Ranes | Northrim Ranes & Shine, LLC | $5,392.00 |
| 41 | 10/28/04 | Ranes | Northrim Ranes & Shine, LLC | $6,660.00 |

| 42 | 10/29/04 | Ranes | Northrim Ranes & Shine, LLC | $9,800.00 |
| 43 | 11/1/04 | Ranes | Northrim Ranes & Shine, LLC | $9,800.00 |
| 44 | 11/2/04 | Ranes | Northrim Ranes & Shine, LLC | $9,835.00 |
| 45 | 11/3/04 | Ranes | Northrim Ranes & Shine, LLC | $8,861.30 |
| 46 | 11/4/04 | Ranes | Northrim Ranes & Shine, LLC | $9,085.00 |
| 47 | 11/5/04 | Ranes | Northrim Ranes & Shine, LLC | $9,170.00 |
| 48 | 11/8/04 | Ranes | Northrim Ranes & Shine, LLC | $8,600.00 |
| 49 | 11/9/04 | Ranes | Northrim Ranes & Shine, LLC | $9,900.00 |
| 50 | 11/12/04 | Ranes | Northrim Ranes & Shine, LLC | $6,000.00 |
| 51 | 11/19/04 | Ranes | Northrim Ranes & Shine, LLC | $9,000.00 |
| 52 | 12/1/04 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 53 | 12/3/04 | Ranes | Northrim Ranes & Shine, LLC | $9,860.00 |
| 54 | 12/7/04 | Ranes | Northrim Ranes & Shine, LLC | $9,800.00 |
| 55 | 12/9/04 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 56 | 12/10/04 | Ranes | Northrim Ranes & Shine, LLC | $8,300.00 |
| 57 | 12/22/04 | Ranes | Northrim Ranes & Shine, LLC | $5,500.00 |
| 58 | 12/27/04 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 59 | 12/28/04 | Ranes | Northrim Ranes & Shine, LLC | $6,000.00 |
| 60 | 12/30/04 | Ranes | Northrim Ranes & Shine, LLC | $4,060.00 |
| 61 | 1/6/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 62 | 1/10/05 | Ranes | Northrim Ranes & Shine, LLC | $9,800.00 |
| 63 | 1/11/05 | Ranes | Northrim Ranes & Shine, LLC | $9,700.00 |
| 64 | 1/13/05 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 65 | 1/18/05 | Ranes | Northrim Ranes & Shine, LLC | $8,500.00 |
| 66 | 1/18/05 | Ranes | Northrim Ranes & Shine, LLC | $8,000.00 |

| 67 | 1/18/05 | Ranes | Northrim Ranes & Shine, LLC | $1,000.00 |
| 68 | 1/20/05 | Ranes | Northrim Ranes & Shine, LLC | $8,500.00 |
| 69 | 1/25/05 | Ranes | Northrim Ranes & Shine, LLC | $5,500.00 |
| 70 | 1/27/05 | Ranes | Northrim Ranes & Shine, LLC | $6,000.00 |
| 71 | 1/28/05 | Ranes | Northrim Ranes & Shine, LLC | $7,840.00 |
| 72 | 2/1/05 | Ranes | Northrim Ranes & Shine, LLC | $8,000.00 |
| 73 | 2/3/05 | Ranes | Northrim Ranes & Shine, LLC | $9,000.00 |
| 74 | 2/4/05 | Ranes | Northrim Ranes & Shine, LLC | $6,000.00 |
| 75 | 2/8/05 | Ranes | Northrim Ranes & Shine, LLC | $6,500.00 |
| 76 | 2/18/05 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 77 | 2/25/05 | Ranes | Northrim Ranes & Shine, LLC | $4,000.00 |
| 78 | 3/1/05 | Ranes | Northrim Ranes & Shine, LLC | $9,300.00 |
| 79 | 3/3/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 80 | 3/8/05 | Ranes | Northrim Ranes & Shine, LLC | $3,100.00 |
| 81 | 3/10/05 | Ranes | Northrim Ranes & Shine, LLC | $3,100.00 |
| 82 | 3/11/05 | Ranes | Northrim Ranes & Shine, LLC | $9,000.00 |
| 83 | 3/14/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 84 | 3/16/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 85 | 4/1/05 | Ranes | Northrim Ranes & Shine, LLC | $5,800.00 |
| 86 | 4/8/05 | Ranes | Northrim Ranes & Shine, LLC | $6,240.00 |
| 87 | 4/20/05 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 88 | 4/21/05 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 89 | 4/22/05 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 90 | 4/25/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 91 | 4/25/05 | Ranes | Northrim Ranes & Shine, LLC | $4,500.00 |

| 92 | 4/26/05 | Ranes | Northrim Ranes & Shine, LLC | $5,400.00 |
| 93 | 4/29/05 | Ranes | Northrim Ranes & Shine, LLC | $8,000.00 |
| 94 | 5/6/05 | Ranes | Northrim Ranes & Shine, LLC | $8,480.00 |
| 95 | 5/9/05 | Ranes | Northrim Ranes & Shine, LLC | $7,000.00 |
| 96 | 5/16/05 | Ranes | Northrim Ranes & Shine, LLC | $3,000.00 |
| 97 | 5/16/05 | Ranes | Northrim Ranes & Shine, LLC | $9,000.00 |
| 98 | 5/19/05 | Ranes | Northrim Ranes & Shine, LLC | $9,820.00 |
| 99 | 5/20/05 | Ranes | Northrim Dylan Bales<br>Northrim Ranes & Shine, LLC | $9,450.00 |
| 100 | 5/20/05 | Ranes | Wells Fargo Dylan Bales<br>Northrim Ranes & Shine, LLC | $9,300.00 |
| 101 | 5/20/05 | Ranes | Alaska USA FCU Dylan Bales<br>Northrim Ranes & Shine, LLC | $9,300.00 |
| 102 | 5/20/05 | Ranes | Northrim Ranes & Shine, LLC | $9,800.00 |
| 103 | 5/27/05 | Ranes | Northrim Ranes & Shine, LLC | $9,163.85 |
| 104 | 5/31/05 | Ranes | Northrim Ranes & Shine, LLC | $4,200.00 |
| 105 | 5/31/05 | Ranes | Northrim Ranes & Shine, LLC | $4,321.00 |
| 106 | 6/2/05 | Ranes | Northrim Ranes & Shine, LLC | $8,583.96 |
| 107 | 6/3/05 | Ranes | Northrim Ranes & Shine, LLC | $8,008.32 |
| 108 | 6/7/05 | Ranes | Northrim Ranes & Shine, LLC | $8,622.11 |
| 109 | 6/9/05 | Ranes | Northrim Ranes & Shine, LLC | $4,023.46 |
| 110 | 6/10/05 | Ranes | Northrim Ranes & Shine, LLC | $3,700.00 |
| 111 | 6/22/05 | Ranes | Northrim Ranes & Shine, LLC | $5,069.36 |
| 112 | 6/23/05 | Ranes | Northrim Ranes & Shine, LLC | $8,913.00 |
| 113 | 6/24/05 | Ranes | Northrim Ranes & Shine, LLC | $5,011.00 |
| 114 | 6/28/05 | Ranes | Northrim Ranes & Shine, LLC | $8,206.60 |

| 115 | 6/28/05-<br>6/29/05 | Ranes | Northrim Dylan Bales<br>Northrim Ranes & Shine, LLC | $9,000.00 |
|-----|---------|-------|------------------------------------------|-----------|
| 116 | 6/29/05 | Ranes | Wells Fargo Dylan Bales<br>Northrim Ranes & Shine, LLC | $9,000.00 |
| 117 | 6/29/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 118 | 6/30/05 | Ranes | Northrim Ranes & Shine, LLC | $6,000.86 |
| 119 | 7/1/05 | Ranes | Northrim Kevin Browning<br>Northrim Ranes & Shine | $45,000.00 |
| 120 | 7/7/05 | Ranes | Northrim Ranes & Shine, LLC | $9,300.00 |
| 121 | 7/8/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |
| 122 | 7/11/05 | Ranes | Northrim Ranes & Shine, LLC | $9,500.00 |
| 123 | 7/13/05 | Ranes | Northrim Ranes & Shine, LLC | $9,400.00 |
| 124 | 7/19/05 | Ranes | Northrim Ranes & Shine, LLC | $6,400.00 |
| 125 | 7/22/05 | Ranes | Northrim Ranes & Shine, LLC | $7,500.00 |
| 126 | 7/22/05-<br>7/25/05 | Ranes | Northrim Kevin Browning<br>Northrim Ranes & Shine, LLC | $21,500.00 |
| 127 | 7/22/05-<br>7/26/05 | Ranes | Northrim Kevin Browning<br>FNBA Ranes & Shine | $28,500.00 |
| 128 | 7/25/05 | Ranes | Northrim Ranes & Shine, LLC | $5,850.00 |
| 129 | 7/27/05 | Ranes | Northrim Kevin Browning<br>FNBA Ranes & Shine, LLC | $68,000.00 |
| 130 | 7/27/05 | Ranes | Northrim Kevin Browning<br>Northrim Ranes & Shine, LLC | $52,000.00 |
| 131 | 8/5/05 | Ranes | Northrim Ranes & Shine, LLC | $6,100.00 |
| 132 | 8/12/05 | Ranes | Northrim Kevin Browning<br>Northrim Ranes & Shine, LLC | $37,000.00 |
| 133 | 10/7/05 | Ranes | Northrim Ranes & Shine, LLC | $5,000.00 |

| 134 | 11/8/05 | Ranes | Northrim Kevin Browning<br>Northrim Ranes & Shine, LLC | $22,500.00 |
| 135 | 2/10/06-<br>2/14/06 | Ranes | Northrim Ranes & Shine, LLC | $42,000.00 |
| 136 | 2/13/06 | Ranes | First National Bank Alaska,<br>Ranes & Shine, LLC | $8,100.00 |

All of which is in violation of Title 18, United States Code, Sections

1956(a)(1)(A)(i), (a)(1)(B)(i), (a)(1)(B)(ii) and 2.

## COUNTS 137 - 140

14. On or about the respective dates specified below, within the District of

Alaska and elsewhere, the defendant listed below, did knowingly transport, transmit, and

transfer monetary instruments and funds in the form of wire transfers, in the amounts set

forth below, from a bank in the United States as set forth below, to a place outside the

United States as set forth below, knowing that the monetary instruments and funds involved

in the transportation, transmission, and transfer represented the proceeds of an unlawful

activity (namely, conspiracy to import, distribute, and to possess with intent to distribute

controlled substances, a violation of 21 U.S.C. §§ 963 & 846) and knowing that such

transportation was designed in whole or in part to conceal and disguise the nature, location,

source, ownership, and control of the proceeds of specified unlawful activities described in

Counts 1 & 2 of this Indictment, and aided and abetted the same, to wit:

| COUNT | DEFENDANT | DATE | FROM /TO | AMOUNT |
|---|---|---|---|---|
| 137 | THOMAS RANES | 10/20/04 | Northrim Bank, Alaska to Marine Transport Bank, Ukraine | $40,000.00 |
| 138 | THOMAS RANES | 11/1/04 | Northrim Bank, Alaska to Marine Transport Bank, Ukraine | $40,000.00 |
| 139 | THOMAS RANES | 11/4/04 | Northrim Bank, Alaska to Marine Transport Bank, Ukraine | $22,000.00 |
| 140 | THOMAS RANES | 11/16/04 | Northrim Bank, Alaska to Marine Transport Bank, Odessa, Ukraine | $85,000.00 |

All of which is in violation of Title 18, United States Code, Sections 1956(a)(2)(B)(i) and 2.

## COUNT 141

### CRIMINAL FORFEITURE—DRUG OFFENSES

14.    Upon conviction of one or more of the controlled substance offenses alleged in Counts 1 and 2 of this Indictment, defendants THOMAS P. RANES, NOPENONE DENNIS SHINE, CURTIS H. MCDONALD, JOSHUA S. MURPHY, JUSTIN KILLIAN, RODNEY RHODEN, SAMUEL JOSEPH  MATECHUK, a/k/a "Joe", MITCHELL S. LEBLANC, a/k/a "Baldie", DANIEL J. KNEITEL, a/k/a "Aussie", KURTIS CROY, a/k/a "the Photographer", KYLE

MCDONALD-WOLOCHATIUK, WILLIAM C. YANCEY, a/k/a "The Viking", and YIN TAK

MIU shall forfeit to the United States any property constituting, or derived from, proceeds

obtained, directly or indirectly, as a result of the said violations pursuant to 21 U.S.C.

§ 853(a)(1), and any property used, or intended to be used, in any manner or part, to commit,

or to facilitate the commission of the said violations pursuant to 21 U.S.C. § 853(a)(2),

including but not limited to:

    a.  Vehicles Used to Facilitate Crimes

        1. 2004 BLACK MERCEDES-BENZ MODEL E55, SEDAN 4-DOOR, Alaska License Number ERK649, VIN WDBUF76J54A421493;

        2. 2005 BEIGE FORD F250 SUPER DUTY, 4-DOOR EXTENDED CAB PICKUP TRUCK, Alaska License Number EVG533, VIN 1FTSX21P95ED33593;

        3. 2001 WHITE 5TH WHEEL GOOSENECK FLATBED TRAILER, Alaska License Number 1769SH, VIN 5BYEG24201E000551;

        4. 2005 SILVER TRITON ENCLOSED SNOWMACHINE TRAILER, Alaska License Number 9091RN, VIN 4TCSU22045HP01335;

        5. 2000 BLACK FORD F350 EXTENDED CAB DUALLY PICKUP TRUCK, Alaska License Number ENF430, VIN 1FTWX33F2YEC74029.

    c.  Equipment Used to Facilitate Crimes:

        VOLVO L-110E FRONT END LOADER.

    d.  Proceeds of Crimes

        1. 2001 BLUE FORD MUSTANG GT COUPE, Alaska License Number EPH366, VIN 1FAFP42X91F124652;

2. 2004 BLACK FORD EXPEDITION EDDIE BAUER, 4-DOOR WAGON/SPORT UTILITY, Alaska License Number EMC331, VIN 1FMPU18L94LA04832;

3. 2003 H2 HUMMER, Alabama License Number unknown, VIN unknown;

4. 2002 BLACK SLND FLATBED, Alaska License Number 5271RL, VIN 2S9EB331X21029929;

5. 2005 WHITE TRAILKING FLATBED TRAILER, Alaska License Number 4191SK, VIN 1TKU016285M010123;

6. 1993 BLUE FORD F250 SUPER CAB PICKUP TRUCK with diamond plate bed side protectors, Alaska License Number 9267CX, VIN 1FTHX26H2PKA88541;

7. 2004 WHITE FORD F450 SUPER DUTY, 4-DOOR EXTENDED CAB CHASIS, Alaska License Number ETD875, VIN 1FDXX47P84EC50305;

8. 2006 TAN TRAILKING FLATBED TRAILER, Alaska License Number, 5702SK, VIN 1TKU016286M072915;

9. 2002 BLACK HAULMARK ENCLOSED FLATBED CAR TRAILER, Alaska License Number 8686RP, VIN 4XSGB28232G037941;

10. YELLOW FLATBED TOW TRUCK, acquired from Green's Towing, Alaska License Number unknown, VIN unknown;

11. 2004 YELLOW INTERNATIONAL FLATBED TOW TRUCK, Alaska License Number EMF695, VIN 1HTMMAAM44H654555;

12. 2003 FORD MUSTANG COBRA, STREET LEGAL DRAGSTER, manufactured by SKINNY KID RACING, Color: Yellow with Red Flames;

13. 1964 RED PONTIAC GTO, 2-door, Alaska License Number EWK484, VIN 824F23210

14. Customized GOLF CART;

15. 1971 GREEN CHEVROLET STANDARD CAB SHORTBED 4X4 PICKUP TRUCK, Alaska License Number ENT716, Serial Number KE141S669517;

16. 1994 BLUE FORD F350 DUALLY CREW CAB 4X4 PICKUP TRUCK, Alaska License Number EHD375, VIN 1FTJW36H9REA36299;

17. 2001 MALIBU WAKESETTER BOAT, Model 21VL, Hull Number US-MB2K6978F303, including accessories; and

18. HAULMARK BOAT TRAILER, Model Pol 10590, Manufactured by Extreme Engineering, VIN 5DBBB22253R000903, Alabama License Plate Number 5TR3916.

f. Money Judgment

A sum of money equal to $2,090,000.00 IN UNITED STATES CURRENCY,

representing the amount of proceeds obtained as a result of the offenses described in Counts

1 and 2 of this Indictment, for which the defendants are jointly and severally liable.

15.   If any of the above-described forfeitable property, as a result of any act or

omission of the defendants, cannot be located upon the exercise of due diligence; has been

transferred, sold to or deposited with a third party; has been placed beyond the jurisdiction of

the court; has been substantially diminished in value; or has been commingled with other

property which cannot be divided without difficulty, it is the intent of the United States,

pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other substitute property of said

defendants up to the value of the forfeitable property described above.

## COUNT 142

## CRIMINAL FORFEITURE—MONEY LAUNDERING

16.     Pursuant to Title 18, United States Code, Section 982(a)(1), each defendant who is convicted of one or more of the offenses set forth in Counts 3 through 143 shall forfeit to the United States the following property:

a. All right, title, and interest in any and all property involved in each offense in violation of Title 18, United States Code, Section 1956 for which the defendant is convicted, and all property traceable to such property, including the following: 1) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of Section 1956; 2) all commissions, fees and other property constituting proceeds obtained as a result of those violations; and 3) all property used in any manner or part to commit or to facilitate the commission of those violations.

b. A sum of money equal to the total amount of money involved in each offense for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

17.     Each defendant shall forfeit substitute property, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 9, of the defendant, if the property described in paragraph 16, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a

third party; has been placed beyond the jurisdiction of the court; has been substantially

diminished in value; or has been commingled with other property which cannot be divided

without difficulty.

All of which is in accordance with Title 18, United States Code, Section 982(a)(1), and

Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL.

 s/ Grand Jury Foreperson_____
GRAND JURY FOREPERSON

 s/ Frank V. Russo_____
FRANK V. RUSSO
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: frank.russo@usdoj.gov

 s/ Nelson P. Cohen_____ _____
NELSON P. COHEN
United States Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: nelson.cohen@usdoj.gov

DATE:    12/14/06_____